# Appendix 9

## AFFIDAVIT OF ROBERT STILLMAN, M.D.

1. I have read Defendant Eli Lilly and Company's "Statement of Uncontroverted Material Facts" in the present case. Defendant distorts, selectively quotes, and mischaracterizes my opinions in its statements of fact Nos. 13, 14, 15, 16, 17, and 18, attached as Exhibit A, and I make this statement to correct these misrepresentations.

2. Regarding Statement No. 13: When a woman comes to my practice, I will tell them that their age can be a factor in their infertility, just as I stated in my deposition. In Ms. Deep's case, her severe uterine malformations from her exposure to DES override any obstacles to pregnancy due to her age, as stated in my testimony on pg. 95:20, attached as Exhibit B.

3. Regarding Statement No. 14: On page 97 (Exhibit C) of my deposition, I testified that a forty-three-year-old with no abnormalities has less than a 50% chance of a live birth, but on page 99 of my deposition, I testified that sixty percent of normal women forty-three years of age would have a live birth. As I clarify on page 98 on my deposition, women at age forty-three, there are women having problems conceiving due to male factors or similar issues, and they have a reduced chance of successful conception. As I stated in my report, male factors are not an issue in this case. If the question asked is the fertility of a forty-three-year-old woman where there are no other factors, I stand by my 60% chance of live birth figure on page 99:14-15, attached as part of Exhibit C.

4. Regarding Statement No. 15: While I stated on pg. 29 that the miscarriage rate for forty-three-year-olds who conceive is 33%-50%, I testified on the same page that, in general, after conception, the chance of carrying the child to term is greater than fifty percent (see Exhibit D). The "general population," as construed by Defendant, includes people like Ms. Deep who have malformed uteruses due to DES and people like the ones I mention on page 98 (Exhibit C) who have husbands who had vasectomies. As stated above, if the question regards the fertility of a healthy forty-three-year-old woman, she has a 60% chance of becoming pregnant and carrying the child to term with assisted reproduction.

5. Regarding Statement No. 16: The 20% and 14% figures for success rates for forty-three year-old women is not applicable to a discussion of how fertile Ms. Deep would be without her DES-related malformations. That figure, as I stated in my deposition, is a group of people who, for various reasons, are pathologically infertile.

6. Regarding Statement No. 17: I did not testify that I could not tell that it is more likely than not that DES caused Ms. Deep's infertility. What I said was that I could not quantify exactly how much Ms. Deep's infertility is caused by her age as she is not a candidate for IVF due to her DES-malformed uterus, and IVF would be the only way to tell if her eggs are still good. As I stated in the deposition pg. 96:15-18 (Exhibit E), her uterus is incompatible with having a baby with her own eggs or donor eggs and she would not have been able to have a baby at age twenty-five.

7. Regarding Statement No. 18: The Defendant distorts my testimony. I did not testify that I could not testify to a reasonable medical probability that Ms. Deep did not conceive and carry a child to term because of DES exposure. I testified Ms. Deep's uterus, in all reasonable

medical probability precludes Ms. Deep from having a pregnancy. As I testified, Ms. Deep's uterus absolutely precludes her from carrying a child to term, pg. 92:8-11 (Exhibit F).

8. As I stated at my deposition, Ms. Deep's DES-caused uterine anomalies rendered her unable to carry her child. In terms of the ability to conceive and carry a child to term unassisted, Ms. Deep was completely infertile from the moment she was born, and this condition stems entirely from her DES injury. Her age is not the major factor regarding her ability to conceive a child.

I state under penalty of perjury that the above statement is true and correct. Executed this 27 day of April, 2007.

Robert Stillman, M.D.

Witnessed by:

_____

_____

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE ANN DEEP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION No. 1:06-cv-00111-RWR |
| ) | |
| ELI LILLY AND COMPANY. ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is a products liability action allegedly involving the prescription drug diethylstilbestrol ("stilbestrol" or "DES"), an unpatented synthetic estrogen used for decades to treat a variety of conditions, including the treatment of some types of cancer and some accidents of pregnancy. On January 10, 2006, plaintiff Catherine Ann Deep ("plaintiff") filed this action against Eli Lilly and Company ("Lilly"), alleging that her mother, Mary Catherine McGregor ("plaintiff's mother"), ingested DES during her pregnancy with plaintiff in 1961-62 and that, as a result, plaintiff sustained abnormalities of her reproductive tract including uterine and cervical malformations and infertility. Lilly now moves for summary judgment because the undisputed facts and relevant law establish that plaintiff's claims fail as a matter of law.

First, Maryland law requires plaintiff to prove that she was exposed to DES. Plaintiff, however, has no admissible evidence that her mother ingested DES during her pregnancy with plaintiff. Plaintiff has identified no pharmacy, medical or other records showing that plaintiff's mother took DES during her pregnancy with plaintiff. Instead, plaintiff offers inadmissible hearsay testimony that her mother was prescribed DES during her pregnancy with

138487v1

plaintiff. In the absence of admissible evidence that plaintiff was exposed *in utero* to DES, plaintiff cannot prove an essential element of her cause of action and Lilly is entitled to summary judgment.

Second, under Maryland law, plaintiff must prove by a preponderance of the evidence that Lilly caused her alleged inability to have a child. Plaintiff claims DES caused her to have a misshapen T-shaped uterus and that, as a result, she is unable to have a baby. According to Maryland courts, plaintiff's claims will fail on causation grounds unless she can prove that it is more likely than not that Lilly caused her alleged inability to have a child. Plaintiff's expert, Dr. Robert J. Stillman, testified that, in his opinion, DES caused plaintiff's uterine deformity. He also testified that plaintiff's uterine deformity causes no problems or difficulty to plaintiff outside of her reproductive capabilities. Dr. Stillman also testified that any 43-year-old woman in the general population has a less than 50% chance of conceiving and having a live birth. Since plaintiff has failed to provide any expert testimony that it is more likely than not that Lilly – as opposed to plaintiff's advanced maternal age – caused her alleged inability to conceive and carry a child to term, plaintiff's claims against Lilly fail as a matter of law.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. Plaintiff alleges that her mother, Mary Catherine McGregor, ingested DES during her pregnancy with plaintiff in 1961-62 and that, as a result, plaintiff sustained certain injuries to her reproductive tract that have prevented her from having a child.[1] (Plaintiff's Complaint, ¶¶3, 4; Plaintiff's Answers to Defendant's First Set of Interrogatories, Nos. 11, 17, & 20, excerpts attached hereto as Exhibit 1.)

---

[1] For purposes of this motion only, Lilly does not contest plaintiff's allegations and testimony cited herein, including her allegation that she sustained injuries she alleges were caused by DES exposure. However, if this action is not disposed of by this motion for summary judgment, Lilly will present evidence at trial and contend, among other things, that plaintiff has failed to prove that her alleged DES exposure caused her to sustain any injuries. In particular, Lilly will present expert testimony, evidence from the medical records, and other evidence that plaintiff's medical problems are unrelated to DES exposure.

-2-

138487v1

2. Plaintiff's mother was pregnant with her in 1961-62 in Tacoma Park, Maryland. (Exhibit 1, Nos. 11 & 17.) Plaintiff has lived in Maryland since her birth. (Exhibit 1, No. 2.)

3. Plaintiff's mother <u>denied taking DES</u> or "anything like that" when originally asked by her daughter. (Mary Catherine McGregor's Deposition, Exhibit 2, p. 62, lines 10-17).

4. Plaintiff has no records of her mother's pregnancy with her. (*See* Plaintiff Catherine Ann Deep Response to Defendant Eli Lilly and Company's First Request for Production of Documents or Tangible Things, excerpts attached hereto as Exhibit 3, No. 3.)

5. The pregnancy history section of plaintiff's mother's gynecological records contain absolutely no indication that she ingested DES during any of her pregnancies, including her pregnancy with plaintiff. (*See* Mary Deep (McGregor)'s 10/5/1994 record from Atiya H. Gopalani, M.D., attached hereto as Exhibit 4; Mary (Deep) McGregor's 8/22/2005 record from Mary Heather Sine, M.D., attached hereto as Exhibit 5)

6. Plaintiff's medical records note that her mother denied taking DES. (*See* plaintiff's 8/8/2005 and 8/11/2005 records from Atiya H. Gopalani, M.D., attached hereto as Exhibit 6.)

7. Plaintiff's mother testified that when plaintiff – who was crying – mentioned to her mother that "she had gone to a doctor who said she couldn't have a baby because of [DES]" and that DES is the same as diethylstilbestrol, plaintiff's mother realized she had taken "diethbestrol." (Plaintiff's Deposition, Exhibit 7, pp. 70, lines 6-22; 71 lines 1-22; 72, lines 1-7; Exhibit 2, p. 61, lines 13-17; p. 67, lines 11-18).

8. Plaintiff alleges that Dr. James Frawley prescribed DES for plaintiff's mother during her pregnancy with her in Maryland and that her mother filled her DES prescription in Maryland. (Exhibit 1, No. 20.)

-3-

138487v1

9. Dr. James Frawley is deceased. (Exhibit 2, p. 29, line 20.)

10. Plaintiff's mother testified that she does not remember Dr. Frawley telling her what he was prescribing to her during her pregnancy with plaintiff, but that she remembers reading "diethylstilbestrol" on the label of the prescription bottle. (Exhibit 2, at p. 36, lines 12-22; p. 37, lines 1-5.)

11. Plaintiff's mother testified that the DES she allegedly ingested during her pregnancy with plaintiff was a little bit bigger than an aspirin, white, round, and cross-scored. (Exhibit 2, at p. 40, lines 6-17; p 41, lines 1-10.) She does not recall any other details of the pill itself. (Exhibit 2, at p. 41, lines 7-11.)

12. Plaintiff began trying to conceive in May 2005, one month shy of her 43rd birthday. (Exhibit 1, No. 9.)

13. Plaintiff's treater and medical expert, Robert J. Stillman, M.D. stated that, when plaintiff first visited him at age 43, he would have discussed with plaintiff her advanced reproductive age, "an important factor" in her likelihood of conceiving and carrying a child to live birth. (Dr. Stillman Deposition, Exhibit 8, p. 82-84, lines 19-22; 1-22; 1-13.)

14. Dr. Stillman testified that a 43-year-old **with no reproductive abnormalities** has a less than 50% chance of conceiving and carrying a child to term, even with the use of assisted reproductive technologies. (Exhibit 8, p. 97-98, lines 7-22; 1-10.)

15. Dr. Stillman testified that in the general population, the likelihood of a 43-year-old having a live birth is "at least one in three," (Exhibit 8, p. 29, lines 17-22), and the miscarriage rate of a 43-year-old who actually conceives is between 33-50%. (Exhibit 8, p. 23-24, lines 20-23; 1-4.)

16. Dr. Stillman also testified that at his fertility clinic, only 20% of 43-year-old women are able to conceive and only 14% of 43-year-old women are able to carry their pregnancies through to a live birth. (Exhibit 8, p. 28, lines 11-18).

-4-

138487v1

17. Dr. Stillman could not testify that it is more likely than not that plaintiff, but for her alleged DES exposure, would have been able to conceive and carry a child to term. (Exhibit 8, p. 93, lines 3-20.) Rather, he testified that plaintiff's age and uterus shape are both "contributing factor[s]" to her inability to conceive and carry a child to term, but that "it's hard to know which one is the majority factor." (*Id.*)

18. Dr. Stillman could not testify to a reasonable medical probability that plaintiff did not conceive because of DES exposure. (Exhibit 8, p. 91-92, lines 17-22; 1-11.)

19. Dr. Stillman testified that plaintiff's uterine deformity causes no problems or difficulty to plaintiff outside of her reproductive capabilities. (Exhibit 8, p. 110, lines 9-14.)

## LAW AND ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party is entitled to judgment as a matter of law based on the undisputed material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

The party moving for summary judgment bears the initial responsibility of identifying the documents and testimony which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has shown the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth affirmative admissible evidence and specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986); Fed. R. Civ. P. R. 56(e). The non-moving party must do more than express doubt as to the truth of the moving party's factual submissions, and must show "concrete evidence from which a reasonable juror could return a verdict in his favor."

-5-

138487v1

# Exhibit B

1  a uterine factor, but if she wanted to come to us and
2  have a trial of an IVF cycle and a gestational carrier
3  using her own eggs, that would be perfectly
4  appropriate to do.
5      Q    I want to make sure that I'm clear on what
6  your testimony would be or is in the case. You
7  testified that her uterine shape is a substantial
8  contributing factor to her infertility, correct?
9      A    Correct.
10     Q    Is it also correct that her age is a
11 substantial contributing factor to her infertility?
12     A    Both of those, from what we know now.
13     Q    And in the Gilbert case you put a percentage
14 of 60 percent DES, 40 percent age. Are you able to
15 attach percentages in this case?
16         MR. LEVINE: I'm going to object, because
17 this is a case where he is advising the woman not to
18 use her uterus. How can he do that?
19         THE WITNESS: I mean I think the -- the
20 uterus is an overriding factor regardless of her age.
21 What we don't know is: Is the age also a factor that
22 would require to use donor eggs with a gestational