# Appendix 12

## Statement of Julius S. Piver

1. I am a board certified Obstetrician and Gynecologist and have been engaged in the practice of Obstetrics and Gynecology since 1956. I am a member of the American College of OB/GYN and the American College of Gynecological Laparoscopists.

2. I am familiar with the standard of care and the usual and ordinary practice of OB/GYNs in the United States in major population centers from the 1960's to date. I gained this familiarity from my schooling at George Washington University, where I graduated in 1952, and during my residency in OB/GYN at Columbia Hospital for Women, 1953-1956.

3. I practiced OB/GYN in Langley Park, a suburb of Washington, D.C., during the 1960's. I was familiar and friendly with Dr. James Frawley, who also practiced OB/GYN in the Langley Park area, and was a colleague of mine at Columbia Hospital for Women. I discussed and reviewed the practice of Obstetrics with Dr. Frawley frequently in the management and treatment of patients and in the various therapeutic modalities. The standard of care, at that time, and the usual and regular practices of Obstetrics called for the treatment for staining or spotting in the early months of pregnancy with the administration of diethylstilbestrol. During the 1960's, Dr. Frawley, as did I, consistent with the standard of care of Obstetrics, prescribed diethylstilbestrol to our pregnant patients when indicated, i.e., spotting or staining early in the pregnancy as any regular and usual therapy

4. I have reviewed the report of Robert Stillman, dated January 27, 2006, attached hereto as Appendix A, and HSG, attached hereto as Appendix B.

5. I understand and assume that the mother of Catherine Deep was a patient of Dr. Frawley and experienced staining and spotting in the first trimester of her pregnancy. Considering my familiarity with Dr. Frawley's practice and the report and HSG attached, I have no doubt that Ms. Deep's mother was prescribed DES by Dr. Frawley during her pregnancy with Catherine.

6. In the 1960s as well as today, the average practicing OB/GYN was not capable of conducting animal, clinical, controlled, comprehensive studies into the side effects and risks of the pharmaceuticals being prescribed. The standard of care and usual and customary practice in the OB/GYN field in the U.S. was to rely upon the manufacturers to test comprehensively and to relate to the practicing physician any questions or unanswered risks, which might arise from the exposure to pharmaceuticals manufactured by that company in their clinical practice.

7. Attached as Appendix C, is a special warning about use of DES in pregnancy. I have reviewed the literature regarding the risks of in utero exposure

to DES and believe that such a warning should have been promulgated by Eli Lilly and other manufacturers in PDR and their other informational labeling.

8. In 1970 Eli Lilly was known as the primary manufacturer of DES and most well-known manufacturer of DES and was considered by the OB/GYN community to be the most reliable source of information regarding DES.

9. It was the customary ordinary and usual practice of OB/GYNs in major population centers in the U.S. in 1970 to read and heed the Lilly literature, reports from detail men and PDR entries regarding the risks of in utero DES exposure.

I state under penalty of perjury that the above statement is true and correct. Executed September 29, 2006.

_____
Julius S. Piver, MD