Appendix 16

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAYNE D. KRAMER,

        Plaintiff,

        v.

ELI LILLY AND COMPANY,

        Defendant.

Civil Action 03-02325 (HHK)

## MEMORANDUM OPINION AND ORDER

Jayne Kramer ("Kramer") brings this products liability action against Eli Lilly and

Company ("Eli Lilly") claiming that she was exposed *in utero* to a prescription drug produced

by Eli Lilly, diethylstilbestrol ("DES"), which has caused her to suffer a number of injuries,

including uterine and cervical malformations, infertility, and physical and mental pain. Compl.

¶ 4. Before the court is Eli Lilly's motion for summary judgment. Eli Lilly contends that

Kramer's infertility is caused by her age and poor egg quality, not her exposure to DES. Upon

consideration of Eli Lilly's motion, the opposition thereto, and the summary-judgment record,

the court concludes that the motion must be denied.[1]

---

[1]    While Eli Lilly's opening brief states that it seeks "Summary Judgment on all
claims," Def's Mot. at 1, it is apparent that the present motion only addresses whether Eli Lilly is
entitled to judgment on Kramer's claim that her exposure to DES caused her to be infertile.
Indeed, Eli Lilly appears to concede that this is so. In its Reply brief, Eli Lilly states that "[i]t is
true that Plaintiff asserts an 'injury' of a malformed uterus which this Motion does not address."
Def's. Reply at 2. Moreover, Eli Lilly's statement of material facts not in dispute only pertains
to Kramer's claim that her exposure to DES caused her to be infertile.

## I. BACKGROUND

In 1961 and 1962, during her pregnancy with Kramer, Kramer's mother bought and

ingested 100 milligrams of DES daily. Compl. ¶ 3; Def's. Ex. 2, ¶ 8. The DES, which came in

pill form, was prescribed by her physician and manufactured and sold by Eli Lilly.[2] Compl. ¶ 3;

Def's. Ex. 2, ¶ 8. Though it was the mid-1980's when Kramer first became aware that her

mother took DES while pregnant with her, Def's. Ex. 2, ¶ 10(a), it does not appear that Kramer

experienced any adverse effects from her exposure to the drug until later in her life when she

encountered difficulties becoming pregnant. Kramer first began trying to get pregnant in July

of 1999, prior to her marriage, at the age of 37. Dep. of Jayne Kramer ("Kramer Dep.") at

73:21, 74:1. Despite three years of consistent effort, Kramer failed to conceive.[3] Id. at 74:7-12.

She first consulted a physician about her failure to become pregnant in June 2002, at which

point she was diagnosed with "a small irregular uterine cavity noted consistent with DES

exposure," as well as primary infertility. Def's. Ex. 4 at 8. Over the next year, doctors

determined she had a small cervix, severe hypoplastic uterus, cervical collar, T-shaped uterus,

---

[2]     Between 1947 and 1967, Eli Lilly manufactured and sold DES, a synthetic
estrogen, for prescription use by pregnant women because the drug was believed to prevent
miscarriages. *Eli Lilly & Co. v. Home Ins. Co.*, 653 F.Supp. 1, 1-2 (D.D.C. 1984). A number of
studies ultimately discredited this proposition, and in 1971 *in utero* exposure to DES was linked
to a form of cervical cancer as well as various other reproductive disorders experienced by the
daughters of women who took DES while pregnant. *Id.* at 2.

[3]     There is some confusion as to exactly how long Kramer attempted to become
pregnant before consulting a physician. In her deposition, Kramer states that she first started
trying in 1999 at the age of 37 and that she never stopped. Kramer Dep. 74:1-10. However, Dr.
Ashby's report, written in June 2002, indicates that Kramer had been trying for "approximately 8
months." Def's. Ex. 4, PL2217. Regardless of the exact amount of time, it is clear that Kramer
at least began trying to get pregnant in 1999 and that she was unsuccessful up to the point that
she visited a physician in 2002.

and DES cervix, all of which Kramer alleges were also causally related to her *in utero* exposure to DES. Def's. Ex. 2, ¶ 13. Beginning in 2002, Kramer went through multiple cycles of intrauterine insemination ("IUI"), a form of fertility treatment, without success. Def's. Ex. 5. She then proceeded with in-vitro fertilization ("IVF") using her own egg, which resulted in a chemical spontaneous abortion on May 18, 2003. Def's. Ex. 2, ¶¶ 13(e), 15(a). Kramer has not yet attempted IVF using a donor egg. Dep. of Dr. Merle Berger ("Berger Dep.") at 45:2.

## II. ANALYSIS

Under FED. R. CIV. P. 56, summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, admissions on file and affidavits" show that there is no genuine issue of material fact in dispute and that "the moving party is entitled to judgment as a matter of law." Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Eli Lilly asserts that it is entitled to judgment on Kramer's claim that her exposure to DES caused her to be infertile because "her own delayed marriage was the more than 95%

3

likely cause of that infertility."[4] Def's. Mot. at 1. According to Eli Lilly, Kramer's poor egg quality and relatively advanced age accounts for her infertility, not her exposure to DES. Kramer concedes that her age has played a role in her inability to become pregnant, but she is steadfast in her contention that her exposure to DES "caused a significant loss of fertility" and that she is entitled to recover for the extent of that loss. Pl's. Opp'n at 9, 11.

In support of its position that Kramer's relatively advanced age accounts for her inability to conceive, Eli Lilly points out that Kramer did not attempt to become pregnant until July of 1999, at which point she was 37 years old. Kramer Dep. at 74:1. Upon her first consultation with Brigham and Women's Hospital Center for Reproductive Medicine in June 2002, Dr. Rachel Ashby reported that Kramer had a "quoted pregnancy rate of less than 5% success per cycle, given her age and Clomid challenge test results." Def's. Ex. 4, PL2218. She also noted that Kramer was "not a candidate for conventional IVF given her FSH values, which are both above the level of 15 and she is over the age of 40."[5] Id. In a report prepared after Kramer's follow up consultation in July 2002, Dr. Ashby noted that Kramer was "again reminded that she is not a candidate at this time for conventional IVF due to her advanced FSH over the age of 40." Def's. Ex. 4, PL2220. Dr. Ashby also stated that Kramer's "likely overall

---

[4]     This particular formulation of Eli Lilly's argument is utterly without merit. Whether a woman is or is not married has no bearing on whether she is capable of procreation. Apparently, Eli Lilly intends to argue that the root of Kramer's infertility lies with her age, a contention that has an actual basis in the field of reproductive science.

[5]     FSH stands for Follicle Stimulating Hormone. Doctors often use FSH values to predict a patient's response to fertility treatments. As patients age, their FSH values increase, and their fertility decreases, so high FSH levels may be one indication of low fertility. Aron Johnson et al., *Defining the Discriminatory FSH Cut Off in an IVF Program*, Pacific Coast Reproductive Society Annual Meeting (2004), at http://www.fertilityoregon.com/Papers/FSH-Cut-off.htm (last visited May 3, 2005).

4

success rate is less than 5% per cycle, probably realistically more in the level of 1 to 2 % given her age and FSH levels." *Id.* Dr. Pei-Li Huang, with whom Kramer consulted for a second opinion in July 2002, reported that she and Kramer "discussed age and the impact of fertility and with increasing age there is a lower chance of pregnancy." Def's. Ex. 10, PL2425. Dr. Huang recommended that Kramer proceed with hormone stimulation as Dr. Ashby suggested, a course of action which Kramer pursued. When Kramer returned to Dr. Ashby after a failed IUI cycle, Dr. Ashby concluded that it was "what we would expect given her advanced age and FSH levels." Def's. Ex. 5, PL2225.

In addition to her age, Eli Lilly contends that Kramer's poor egg quality caused her to be unable to become pregnant. In May 2003, Kramer obtained an additional opinion from Dr. Selwyn Oskowitz, a reproductive endocrinologist at Boston IVF. Dr. Oskowitz acknowledged Kramer's exposure to DES and her T-shaped uterus, and then she stated that "I feel the oocyte factor is the most significant finding."[6] Def's. Ex. 6, FH5007. Eli Lilly also points out that Kramer's own expert witness acknowledged that Kramer's reduced ovarian reserve was a significant contributory factor in Kramer's failure to become pregnant. Def's. Ex. 8 at 26:14. He testified that, independent of any other factor, the oocyte factor placed Kramer's opportunity for IVF success at less than 10%. *Id.* at 32:20. In addition, he testified that he could not identify any instances in which Kramer's abnormal uterus caused the failure of any fertility effort by Kramer thus far, though he did believe it to be a factor. *Id.* at 39:13-14.

---

[6]    The "oocyte factor" refers to Kramer's decreased ovarian reserve, her poor egg quality, and her low response rate to hormone stimulation. Def's. Ex. 8, 26:14-18.

5

Against this evidence, Kramer presents the opinion of Dr. Merle Berger.[7] Dr. Berger

testified that, while he believes the oocyte factor to be important, he does not think it is the most

significant factor. Berger Dep. at 32:12-13. In his opinion, a woman who had not been exposed

to DES and had a decreased ovarian reserve similar to Kramer's would have a 70% chance of

having a child if she used a donor egg, as compared to 10% for Kramer. *Id* at 42:8-22. Dr.

Berger also has expressed the view that "Mrs. Kramer's exposure to DES was a substantial

contributing factor in her infertility including multiple ART treatment cycles and with a high

degree of probability will lead to continued failure even with the use [sic] donor eggs and may

require the use of a surrogate or the consideration of adoption." Def's. Ex. 12.

In light of the applicable principle of law that requires Kramer's evidence to be believed

and all justifiable inferences to be drawn in her favor, it is apparent that Eli Lilly is not entitled

to judgment. Quite simply, the summary-judgment record reveals a genuine issue of material

fact regarding whether and to what extent DES caused Kramer's infertility.

### III. CONCLUSION

For the aforementioned reasons, it is this 9th day of May, 2005, hereby

**ORDERED** that Eli Lilly's motion for summary judgment is **DENIED.**

Henry H. Kennedy, Jr.
United States District Judge

---

[7]     Dr. Berger is as Associate Clinical Professor of Obstetrics, Gynecology and
Reproductive Biology at Harvard Medical School. He also practices Reproductive
Endocrinology at Boston IVF. Def's. Ex. 12.

6