IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE ANN DEEP, <br><br> Plaintiff, <br><br> vs. <br><br> ELI LILLY AND COMPANY. <br><br> Defendant. | CIVIL ACTION No. 1:06-cv-00111-RWR |

**DEFENDANT ELI LILLY AND COMPANY'S REPLY IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff's Opposition to Defendant Eli Lilly and Company's ("Lilly") Motion for Summary Judgment ("Plaintiff's Opposition") offers argument and speculation as fact and inadmissible evidence in opposition to Lilly's Motion for Summary Judgment. Plaintiff has failed to identify admissible testimony from a single witness, or any medical or pharmacy records, establishing that she was exposed to DES *in utero* in 1961-62. Furthermore, plaintiff cannot establish causation under Maryland's preponderance of the evidence standard as a matter of law. For these reasons, Lilly is entitled to summary judgment.

**STATUS OF STATEMENT UNCONTROVERTED MATERIAL FACTS**

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 3 does not create a genuine issue of material fact that precludes entry of summary judgment.

2453952v1

Plaintiff's mother attempts to explain away her initial unequivocal denial to her daughter of having taken DES "or anything like that" by claiming during her deposition that she did not know that DES was diethylstilbestrol until plaintiff spoke to her. This does not controvert Lilly's Undisputed Material Fact No. 3 that plaintiff's mother originally denied having taken DES "or anything like that." *See* Lilly's Memorandum in Support of its Motion for Summary Judgment, Undisputed Material fact No. 3 and citations therein.

    4.  Uncontroverted.

    5.  Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 5 does not create a genuine issue of material fact that precludes entry of summary judgment. While plaintiff speculates why she believes there is no reference to DES in the pregnancy history section of the attached medical records, the undisputed fact remains that there is no reference to DES in these documents. *See* Lilly's Memorandum in Support of its Motion for Summary Judgment, Undisputed Material fact No. 5 and citations therein.

    6.  Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 6 does not create a genuine issue of material fact that precludes entry of summary judgment. Plaintiff once again attempts to explain away her mother's initial unequivocal denial of having taken DES by claiming that her mother did not know that DES was diethylstilbestrol. This does not controvert Lilly's Undisputed Material Fact No. 6 that plaintiff's mother originally denied having taken DES. Further, plaintiff's response does not (and cannot) dispute that Exhibit 6 to Lilly's Memorandum in Support of its Motion for Summary Judgment includes the handwritten entry: "States she is not DES baby per her mother." *See* Memorandum in Support of Lilly's Motion for Summary Judgment, Undisputed Material Fact No. 6 and citations therein.

    7-9.  Uncontroverted.

2453952v1

10. Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 10 does not create a genuine issue of material fact that precludes entry of summary judgment. Plaintiff does not dispute that her mother does not recall Dr. Frawley telling her what he was prescribing for her. Once again, plaintiff's mother initially and unequivocally denied having taken DES, but later claimed that not only did she take it, but she also remembers seeing the drug's name on the bottle and what she believes was Eli Lilly's name. However, plaintiff's mother testified *during the same deposition in which she claims to remember seeing Lilly's name on the bottle* that she did *not* recall seeing the name of the manufacturer on the bottle:

> "Q: Do you remember the name of the drug company that made the medication on the bottle?
>
> A: No, that I don't remember, to be honest with you."

Depo. of Mary Catherine McGregor, excerpts attached hereto as **Exhibit A**, at p. 37, lines 18-21.

11. Uncontroverted.

12. Uncontroverted. Not only do plaintiff's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories (answered under oath) unequivocally state that plaintiff began attempting pregnancy in May, 2005, her medical records directly contradict plaintiff's contention to the contrary. Plaintiff argues in her Opposition Brief that she began attempting to conceive in May, 2004 and stopped all birth control at that time. Plaintiff's Opposition, p. 4, ¶ 12. However, plaintiff's own medical records indicate that plaintiff was still taking oral contraceptives well after May, 2004 and that she told her doctor she was *considering* pregnancy in May, 2005. *See* September 28, 2004, December 15, 2004 and March 16, 2005 office notes of Dr. Gopalani (indicating that plaintiff was taking the oral contraceptive Ortho Novum at the time); May 5, 2005 chart note of Dr. Gopalani indicating that plaintiff was "considering pregnancy," and "wants to know whether to attempt conception now (*took last*

*OCP Mon. 5/2) . . .*" attached hereto as **Exhibit B** (emphasis supplied); *see also* Exhibit 1 to Lilly's Memorandum in Support of It's Motion for Summary Judgment, No. 9 ("Plaintiff started attempting pregnancy in May 2005 and has not been able to conceive."). Plaintiff's argument that she began attempting conception in May, 2004 is directly contradicted by her written discovery responses and her own medical records. As such, plaintiff does not controvert Lilly's Statement of Uncontroverted Fact No. 12.

    13. Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 13 does not create a genuine issue of material fact that precludes entry of summary judgment. Plaintiff attempts to explain away Dr. Stillman's testimony that he would have discussed her advanced maternal age as "an important factor" in her likelihood of conceiving and carrying a child to live birth (*see* Memorandum in Support of Lilly's Motion for Summary Judgment, Undisputed Material Fact No. 13 and citations therein) by asserting that plaintiff's uterus is an "overriding factor . . . ." Plaintiff's Opposition, p. 4, ¶ 13. However, plaintiff does not controvert the fact that Dr. Stillman conceded that he would have discussed with plaintiff that her age was an "important factor."

    14. Plaintiff's response to Lilly's Undisputed Material Fact No. 14 does not create a genuine issue of material fact that precludes entry of summary judgment. Plaintiff concedes that Dr Stillman testified that "a forty-three-year-old with no abnormalities has less than a fifty percent chance of a live birth . . ." (plaintiff's Opposition, p. 5, ¶ 14.) Plaintiff then attempts to explain away his testimony.[1] However, Dr. Stillman's testimony was clear:

---

[1]  To the extent plaintiff attempts to contradict Dr. Stillmans's sworn testimony with his affidavit, his affidavit should be disregarded. *See Thompson v. Islam*, 2005 WL 3262926, *3 (D.D.C. 2005) (*citing Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F. 2d 1114, 1123 (D.C. Cir. 1991) (additional citations omitted).

"Q: Would you agree that a 43-year-old who starts attempting to conceive with no abnormalities does not have a greater than 50 percent chance of having a live birth?

A: Correct.

Q: Would you agree – would that answer be the same with [Assisted Reproductive Technologies], that 43-year-old patients that you help, that you treat in your practice starting without a uterine abnormality, do not have a greater than 50% chance of having a live birth?

A: They don't have a greater than 50% chance.

Q: Their chances are less than 50%?

A: Correct."

Exhibit 8 to Memorandum in Support of Lilly's Motion for Summary Judgment, at p. 97, line 7 through p. 98, line 2.

    15.    Plaintiff's response to Lilly's Undisputed Material Fact No. 15 does not create a genuine issue of material fact that precludes entry of summary judgment. Plaintiff concedes Lilly's statement of fact accurately reflects Dr. Stillman's testimony that the miscarriage rate of a 43-year-old who conceives is between 33-50%, but then denies Lilly's statement of fact and attempts to explain it away. Plaintiff does not even address Dr. Stillman's testimony that the likelihood of a 43-year-old having a live birth is "at least one in three." *See* Lilly's Undisputed Material Fact No. 15 and citations therein.

    16.    Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 16 does not create a genuine issue of material fact that precludes entry of summary judgment. In fact, plaintiff fails to directly respond to the statement of fact. Instead, plaintiff attempts to create a dispute where none exists through a general reference to the fertility of women who seek treatment versus women "in their age group at large." Plaintiff's Opposition, p. 6, ¶ 16. However, Defendant's Undisputed Material Fact No. 16 is limited to Dr. Stillman's

deposition testimony, under oath, that his clinic experienced a 20% success rate for achieving conception and a 14% success rate for achieving a live birth in the 43-year-old female population seeking treatment through his clinic in 2005. *See* Memorandum in Support of Lilly's Motion for Summary Judgment, SOF, ¶ 16 and citations therein. Plaintiff has not controverted this testimony.

Plaintiff's contention that the "travails of forty-three-year-olds may not be relevant" because she began attempting conception at an earlier date than set forth in Lilly's SOF, ¶ 12 is directly contradicted by her written discovery responses and her own medical records establishing that she began attempting pregnancy approximately one month before her 43rd birthday. *See* ¶ 12, *supra*, and citations therein. Plaintiff has failed to controvert SOF, ¶ 16.

17.    Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 17 does not create a genuine issue of material fact that precludes entry of summary judgment. Plaintiff concedes that Dr. Stillman testified that he "cannot quantify exactly how much Ms. Deep's infertility is caused by her age. . ." Plaintiff's Opposition, p. 6, ¶ 17. Plaintiff attempts to (but cannot) explain away the fact that Dr. Stillman testified that he cannot state that it is more likely than not that plaintiff, but for her alleged DES exposure, would have been able to conceive and carry a child to term and that between her advanced age and her uterus, "it's hard to know which one is the majority factor." *See* ¶ 14, *supra*, and citations contained therein; *see also* Exhibit 8 to Memorandum in Support of Lilly's Motion for Summary Judgment, p. 93, lines 3-20.

18.    Uncontroverted. Plaintiff's response to Lilly's Undisputed Material Fact No. 18 does not create a genuine issue of material fact that precludes entry of summary judgment. Dr. Stillman cannot even testify that it is more likely than not that plaintiff, but for

2453952v1

her alleged DES exposure, would have been able to conceive and carry a child to term. *See* ¶¶ 14, 17 *supra*, and citations contained therein; *see also* Exhibit 8 to Memorandum in Support of Lilly's Motion for Summary Judgment, p. 93, lines 3-20.

  19. Uncontroverted.

## LILLY'S RESPONSE TO PLAINTIFF'S COUNTER STATEMENT OF UNCONTROVERTED MATERIAL FACTS

  20. Plaintiff's purported counter statement of material fact No. 20 does not raise a genuine issue of material fact that precludes entry of summary judgment. Plaintiff's mother's recollection of a drug she originally denied ever taking (*see* ¶¶ 3, 6, *supra*), and which is purportedly reflected in a photograph provided by plaintiff's counsel, constitutes self-serving speculation. That plaintiff's mother has provided a general description of Lilly's DES pill does not exclude other pharmaceutical drugs that also match her description.

  21. Plaintiff's purported counter statement of material fact No. 21 does not raise a genuine issue of material fact that precludes entry of summary judgment. Again, plaintiff's mother originally denied ever taking DES "or anything like that." (*see* ¶¶ 3, 6, *supra*.) Further, that DES *could have* been prescribed for a woman during pregnancy does not establish that plaintiff's mother *actually was* prescribed DES, or that it was Lilly's DES. Finally, plaintiff's reference to Dr. Piver's deposition testimony for the proposition that "the common practice in 1961-62 was to prescribe DES during pregnancy" is not supported by the deposition transcript attached to plaintiff's motion. *See* Plaintiff's Opposition, p. 7, ¶ 21 and citations therein. In fact, Dr. Piver testified at p. 14 of his deposition that he has no personal knowledge whether Dr. Frawley prescribed DES for plaintiff's mother during her pregnancy, but it is an "assumption on my part that he prescribed it for her mother." *Id.* Furthermore, this Court has recently rejected Dr. Piver's opinion regarding whether a particular physician would necessarily

have followed a national standard of care as being "an implication based on impermissible speculation." *See Kasparian, et al. v. Eli Lilly and Company*, Civil Action No. 06-290, (D.C. April 17, 2007), attached hereto as **Exhibit C**. This is exactly what plaintiff attempts to do with Dr. Piver's testimony here and this effort should be rejected as it was rejected in *Kasparian*.

22. Plaintiff's purported counter statement of material fact No. 22 is legally insufficient to overcome Lilly's motion and does not raise a genuine issue of material fact that precludes entry of summary judgment. Dr. Stillman's statement that he can establish that plaintiff was exposed to DES *in utero* based solely on plaintiff's alleged anatomical abnormalities is inadmissible under Fed. R. Evid. 702 and *Daubert*, 509 U.S. 579. Specifically, expert testimony is admissible only if it is reliable. *See Daubert*, 509 U.S. at 589-90. Moreover, this Court is charged with the responsibility of acting as a gatekeeper to exclude unreliable expert testimony. *Id.* at 589 n.7. In *Daubert*, the Supreme Court noted that several factors are relevant to determining whether expert testimony is reliable, including:

- Whether the expert's theory has been tested;
- Whether the theory has been subject to peer review and publication;
- The known or potential rate of error of the expert's theory when applied;
- The existence and maintenance of standards or controls; and
- Whether the technique has been generally accepted in the scientific community.

*Id.* at 593-94.

Any statement by Dr. Stillman that he can conclude plaintiff was exposed to DES based on her alleged anatomical abnormalities does not comport with methodology generally accepted by scientists or other relevant experts. Neither he nor plaintiff cites any support in the scientific community that DES exposure can be established based on the existence

2453952v1

of plaintiff's alleged injuries alone. Dr. Stillman testified during his deposition in this case that he cannot cite to any published study establishing DES exposure based solely on findings in an HSG. *See* Robert J. Stillman Depo., excerpts attached hereto as **Exhibit D**, at pp. 45-47. He also testified that in his own studies conducted with women exposed to DES, he did not determine exposure based solely upon the women's conditions, but required some documented record evidence of exposure or a history of exposure he was sufficiently confident in to include a woman in the study. *Id.* at pp. 47-48. Thus, Dr. Stillman's statement that he can establish exposure to DES based solely on plaintiff's alleged injuries is inadmissible under Rule 702 and *Daubert* and cannot be considered on summary judgment.

23. Plaintiff's purported counter statement of material fact No. 23 is legally insufficient to overcome Lilly's motion and does not raise a genuine issue of material fact that precludes entry of summary judgment. Plaintiff has attached and characterized excerpts of certain medical texts as indicating that a T-shaped uterus is a "signature" of DES exposure and cervical stenosis as "a common symptom of DES exposure." Plaintiff's Opposition, p. 7, ¶ 23. Lilly denies that plaintiff has accurately characterized the attached texts and asserts that the texts speak for themselves. Furthermore, plaintiff's reference to these texts for the proposition that certain injuries are consistent with DES exposure does not establish that *plaintiff* was, in fact, exposed. *See* Lilly's Reply to Plaintiff's Response to Lilly's Uncontroverted Statement of Material Fact Nos. 3, 6 and 22, *supra*.

24. Plaintiff's purported counter statement of material fact No. 24 does not raise a genuine issue of material fact that precludes entry of summary judgment. While plaintiff accurately quotes part of one sentence of Dr. Stillman's testimony, this does not change his testimony that "a forty-three-year-old with no abnormalities has less than a fifty percent chance

of a live birth . . ." (*see* ¶ 14, *supra*) and that he cannot testify that it is more likely than not that plaintiff, but for her alleged DES exposure, would have been able to conceive and carry a child to term. *See* ¶¶ 14, 17, *supra*.

## LAW AND ARGUMENT

### I. PLAINTIFF CANNOT PROVE EXPOSURE TO DES

Plaintiff cites to prior, unrelated DES cases and asserts that plaintiff's "evidence" of exposure here is stronger than in those cases where summary judgment was denied. *See* Plaintiffs' Opposition, pp. 8-10. In fact, plaintiff's "evidence" constitutes nothing more than a patchwork of inadmissible hearsay, unsupported argument and speculation. As set forth more fully below and in Lilly's Memorandum in Support of its Motion for Summary Judgment, applying Maryland law to the facts of this case, plaintiff cannot produce evidence sufficient to overcome Lilly's motion.

#### A. Plaintiff's Uterine Configuration Does Not Establish DES Exposure.

In arguing that plaintiff's alleged injuries are typical of DES exposure and sufficient to overcome Lilly's Motion for Summary Judgment, plaintiff offers unrelated, prior DES cases and testimony from her own experts that her claimed injuries are consistent with, but not exclusive to, DES exposure. Plaintiff's Opposition, pp. 10-14. In this case, plaintiff's mother actually denied having ever taken DES "or anything like that." *See* ¶¶ 3, 6, *supra*. Dr. Stillman's claim that he can conclude plaintiff was exposed to DES based solely upon her alleged anatomical abnormalities is inadmissible and incompetent under *Daubert* and insufficient to overcome Lilly's motion. *See* ¶ 22, *supra*. In short, plaintiff's uterine configuration does not establish *in utero* exposure to DES.[2]

---

[2] Plaintiff argues that the literature attached to Plaintiff's Opposition as Appendix 14, Attachments A-G supports plaintiff's claim that her injuries are consistent with DES exposure. However, again, that

### B. Plaintiff's Mother's Testimony Regarding What She Took During Her Pregnancy with Plaintiff Constitutes Inadmissible Hearsay.

Under the Federal Rules of Evidence, hearsay is defined as a statement made other than by a witness while testifying at a hearing or trial which is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c); *see also Burgess v. U.S.*, 608 A.2d 733, 737 n. 2 (D.C. 1992) ("This court has defined hearsay as an (1) assertion of fact or belief (2) made out of court, and (3) offered to prove the truth of the matter asserted.") (citation omitted). Hearsay statements are inadmissible unless they fall within an exception to the hearsay rule. *Puma*, 746 A.2d at 875; *Barrera v. Wilson*, 668 A.2d 871, 873 n.3 (D.C. 1995); Fed R. Evid. 802. The burden of establishing the admissibility of hearsay statements rests with the offering party.

Plaintiff's mother testified during her deposition that she was not told by her doctor what he prescribed for her during her pregnancy with plaintiff. *See* Exhibit A, at p 37, line 22 through p. 38, line 4; p. 39, lines 17-21; p. 46, lines 6-9. Mrs. McGregor also has no records from her pregnancy with plaintiff establishing what medication she took during this pregnancy. *See* SOF, ¶ 4. The only memory Mrs. McGregor claims to have regarding the medication she claims to have taken during her pregnancy with plaintiff is that it was a white, round and cross-scored pill that was slightly bigger than an aspirin. SOF, ¶ 11. She also claims to recall that the label on the bottle read "diesterstibestrol (phonetic)" "Eli Lilly" and "25 milligrams." *See* Exhibit A, at pp. 37, 39, 69. Her testimony regarding what she now claims to have read on the bottle's label is inadmissible hearsay because the testimony regarding the label is offered to prove the truth of the matter asserted – the bottle's content – and the label is no longer available.

---

plaintiff's alleged injuries are consistent with DES exposure does not establish that she was, in fact, exposed. In other words, plaintiff cannot show that her alleged injuries occur only in women exposed to DES.

Plaintiff's citation to cases from other jurisdictions addressing the admissibility of testimony regarding labels on various products is also unavailing. First, plaintiff's cited case law is inapposite to the present case because, as noted, the label at issue here is no longer available and plaintiff seeks to prove the truth of the matter asserted regarding the label – that the bottle contained Eli Lilly's DES. In the cases cited by plaintiff in her Opposition Brief, the label at issue was either available at trial or the testimony regarding the label was permitted only for a limited purpose. *See e.g., U.S. v. Alvarez*, 972 F.2d 1000 (9th Cir. 1992) (gun with the inscription at issue was available at trial); *Com. v. Harvey*, 666 A.2d 1108 (Pa.Super., 1995) (holding that testimony regarding the brand inscribed on the can was admissible only to identify the manufacturer of the beverage and not its ingredients or content); *Drayton v. Jiffee Chemical Corp.*, 591 F.2d 352 (6th Cir., 1978) (involving corroboration of identity of manufacturer of recently purchased product at issue by three witnesses, including an independent witness, and without analysis of the hearsay implications of permitting testimony regarding same). Further, in each of the cases cited by plaintiff, the label at issue, if not available at trial, had been relatively recently viewed by the witnesses. Here, plaintiff seeks to offer testimony regarding the content of a label on a bottle that was allegedly viewed by Mrs. McGregor *over 40 years ago*. Plaintiff does not seek to introduce the bottle or label in addition to Mrs. McGregor's testimony, but *only* to offer her testimony about the label. Further, plaintiff seeks to offer Mrs. McGregor's testimony for the purpose of establishing the contents of the bottle, not just the manufacturer of the product. Such evidence is inherently unreliable and does not fall within any exception to the hearsay rule.

Plaintiff's reliance on *Cook v. Eli Lilly and Company*, No. 05-0003406-B, regarding the admissibility of Mrs. McGregor's hearsay statements regarding the bottle's label

does not change this result. "Superior Court holdings are never binding authority in other cases, even in the Superior Court itself." *Lewis v. Hotel and Restaurant Employees Union, Local 25, AFL-CIO*, 727 A.2d 297, 302 (D.C. 1999) (*citing Customers Parking, Inc. v. District of Columbia*, 562 A.2d 651, 654 n.5 (D.C. 1989) ("The trial judge in this case was not bound by the holding of another Superior Court judge in a different case, but it was appropriate for her to treat it, as she did, as persuasive authority.")).

Mrs. McGregor's testimony regarding the content of a prescription bottle label she allegedly viewed over 40 years ago is inherently unreliable and constitutes inadmissible hearsay. The testimony regarding the purported content of a label on a prescription bottle that is no longer available for use during cross examination is being offered by plaintiff to prove the truth of the matter asserted -- that her mother took DES during her pregnancy with plaintiff. Further, Mrs. McGregor's testimony regarding a white, cross-scored pill that was slightly larger than an aspirin does not establish that what she claims to have taken was DES and not some other medication or hormone. Succinctly, plaintiff cannot produce sufficient admissible evidence establishing that her mother took DES during her pregnancy with plaintiff. It is plaintiff's burden to establish that her mother's description of the medication she claims to have taken establishes that she took DES and not some other medication available for use in prevention of accidents of pregnancy. It is not Lilly's burden to prove that this description does not establish DES exposure. Plaintiff has not satisfied her burden.

## II. PLAINTIFF CANNOT PRESENT SUFFICIENT EVIDENCE OF CAUSATION

Plaintiff attempts to distinguish the authority in Lilly's motion regarding causation under Maryland law but, in the final analysis, plaintiff cannot overcome this authority or the fact that her own expert testified that he cannot state that there was a more than 50%

probability that DES exposure caused plaintiff's inability to have a baby as opposed to other risk factors, including her advanced maternal age:

> Q:    Can you say that it is more likely than not, that it is more likely than not that Mrs. Deep, but for her DES exposure, would have a child?
>
> . . .
>
> THE WITNESS:    *I think her age is a contributing factor. I think her uterus is a contributing factor.* If she did an IVF cycle with a gestational carrier, you would need that test to see how she responded. She did have a normal Clomid challenge test, normal – evidence of ovarian function as best we can tell, but as we discussed before, that's an imperfect test, but it's the only one we have without doing a stimulation. If she stimulated well an had good embryos, she, among 43-year-olds, if into a gestational carrier, might very well conceive and have a normal child. *Without that, it's hard – it's hard to know which one is the majority factor.*

Exhibit 8 to Memorandum in Support of Lilly's Motion for Summary Judgment, p. 93, lines 3-20 (emphasis supplied). Dr. Stillman's testimony on the issue of causation could not be more clear – he cannot determine if plaintiff's uterus or her age was the majority factor affecting her fertility. *Id.* Plaintiff's claim that her alleged DES-related injuries "took all of that potential away" (Plaintiff's Opposition, p. 16) is nothing more than unsupported argument that assumes what her own expert cannot – that DES was the primary cause of her fertility issues. As such, plaintiff's argument must be rejected.

Dr. Stillman's affidavit, apparently offered by plaintiff to shore-up his sworn deposition testimony, should be disregarded in its entirety. *See* Plaintiff's Opposition, Appendix 9. While Dr. Stillman claims in his affidavit to be correcting claimed distortions, selective quotes and mischaracterizations of his deposition testimony, he clearly is contradicting and attempting to explain away his unequivocal testimony through his affidavit. "Plaintiff cannot create or resurrect a genuine issue of material fact and thereby defect summary judgment by

filing a self serving affidavit that contradicts previous sworn testimony....The objectives of summary judgment would be seriously impaired if the district court were not free to disregard such an affidavit." *Islam*, 2005 WL 3262626, at *3 (citations omitted).

Plaintiff also attempts to sidestep controlling Maryland law regarding causation and instead claims that *Kramer v. Eli Lilly and Company*, Civil Action No. 03-02325 (D.D.C. May 9, 2005), is controlling. Even if the Court accepts plaintiff's argument that *Kramer* is controlling (which Lilly disputes), *Kramer* does not support plaintiff's position. First, *Kramer* is not binding on this Court. *Lewis, supra*, 727 A. 2d at 302. Second, in *Kramer*, the court specifically noted that one of plaintiff's experts, Dr. Merle Berger, opined that "[i]n his opinion, a woman who had not been exposed to DES and had a decreased ovarian reserve similar to Kramer's would have a 70% chance of having a child if she used a donor egg, as compared to 10% for Kramer." *Kramer*, Appendix 16 to Plaintiff's Opposition, at p. 6. The court also noted that Dr. Berger expressed the view, among others, that plaintiff's alleged DES exposure was a *substantial* contributing factor in her infertility. *Id.* As such, the court found that there was a genuine issue of material fact regarding whether and to what extent DES caused plaintiff's infertility. *Id.*

Here, plaintiff's expert, Dr. Stillman, unequivocally testified that plaintiff's uterus was a *contributing* factor affecting her fertility and that, between her uterus and her advanced maternal age, it is "hard to determine which is the majority factor." Exhibit 8 to Memorandum in Support of Lilly's Motion for Summary Judgment, p. 93, lines 3-20. He also testified that a woman of 43 without uterine abnormalities would not have a 50% chance of conceiving. *See* ¶ 14, *supra*. As such, plaintiff's evidence of causation does not rise beyond the level of conjecture and speculation.

2453952v1

Finally, plaintiff's contention that the Maryland authority cited in Lilly's brief is inapplicable because they "are all medical malpractice cases involving a pre-existing disease" (Plaintiff's Opposition, p.19) is without merit.[3] When plaintiff, at one month shy of her 43rd birthday, began attempting conception, her advanced maternal age was a condition that even her own expert (Dr. Stillman) concedes was a factor affecting her fertility. *See* Exhibit 8 to Memorandum in Support of Lilly's Motion for Summary Judgment, p. 93, lines 3-20. Under Maryland law, applicable in this case, plaintiff must establish causation under Maryland's preponderance of the evidence standard. *See* Memorandum in Support of Lilly's Motion for Summary Judgment, pp. 12-17. Plaintiff cannot satisfy this burden.

## CONCLUSION

The undisputed facts establish that plaintiff has identified no admissible evidence that her mother ingested DES during her pregnancy with her. Further, even if plaintiff could establish that she was exposed to DES *in utero*, she cannot establish under applicable law that her exposure caused her inability to conceive. These are essential elements of plaintiff's claims in this case, and in the absence of such evidence, plaintiff's claims fail as a matter of law. Accordingly, defendant Eli Lilly and Company is entitled to Summary Judgment.

WHEREFORE, defendant Eli Lilly and Company respectfully requests that the Court enter an Order granting summary judgment in favor of Lilly and against plaintiff, and granting such other and further relief as the Court deems just and proper.

---

[3] Plaintiff's contention is not only unpersuasive, it is incorrect. *Marder*, for example, is cited in Lilly's motion for summary judgment (at pp. 9-10) and is a products liability case.

Dated: May 21, 2007

Respectfully Submitted,

SHOOK, HARDY & BACON, L.L.P.

/s/ John Chadwick Coots
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
Emily J. Laird, D.C. Bar No. 485890
600 14th Street, N.W., Suite 800
Washington, D.C. 20005-2004
(202) 783-8400 Telephone
(202) 783-4211 Facsimile

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

2453952v1

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 21st day of May, 2007, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron Levine & Associates
1320 19th St., N.W., Suite 500
Washington, D.C. 20036

**Attorneys for Plaintiff**

      /s/ John Chadwick Coots
**ATTORNEY FOR DEFENDANT**
**ELI LILLY AND COMPANY**

2453952v1