IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE ANN DEEP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:06-cv-00111 (RWR) |
| vs. ) | Next Event: Status Report Due on |
| ) | December 21, 2007 |
| ELI LILLY AND COMPANY, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT ELI LILLY AND COMPANY'S MOTION FOR
RECONSIDERATION OR, IN THE ALTERNATIVE,
FOR CERTIFICATION FOR § 1292(b) INTERLOCUTORY APPEAL**

COMES NOW Plaintiff, through counsel, and opposes Defendant Eli Lilly and Company's ("Defendant" or "Lilly") Motion for Reconsideration or, In the Alternative, for Certification for § 1292(b) Interlocutory Appeal, and as grounds therefore states:

**I.   RECONSIDERATION IS INAPPROPRIATE**

"A court should not grant a motion for reconsideration unless the moving party shows new facts or clear errors of law that compel a change to its prior ruling. . . . A motion to reconsider that merely rehashes previous arguments will be denied." LaPrade v. Abramson, No. 97-10, 2006 U.S. Dist. LEXIS 86431 at *19 (D.D.C. Nov. 30, 2006) (citations omitted). Defendant's motion establishes no new facts and does not establish a clear principle of law that the Court ignored. Instead, it repeats the same arguments it brought up in its moving papers, attempting a second bite at the summary judgment apple.

"Even if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine." Virgin Atl.

Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1256 (2d Cir. 1992). The Supreme Court said of the law of the case doctrine that "a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." Arizona v. California, 460 U.S. 605, 619 (U.S. 1983). Thus, those decisions may not usually be changed unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Cmte. of the Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

There is no change in the controlling law here. Nor is there any new evidence.[1] Therefore, Defendant relies solely on the contention that the Court has made a "clear error" of law. However, movants for reconsideration "cannot demonstrate a clear error of law merely by repeating arguments they asserted in their original briefs." Keystone Tobacco Co. v. United States Tobacco Co., 217 F.R.D. 235, 237 (D.D.C. 2003). As one of the cases cited by Lilly states, when the Court considers both the arguments and decides that one party's arguments and authorities are substantially more persuasive, reconsideration is not warranted. See Clarity Software, LLC v. Allianze Life Ins. Co. of N. Am., No. 2:04-cv-1441, 2007 U.S. Dist. LEXIS 40861 at *3-4 (W.D. Pa. June 5, 2007).

Courts in this District reject arguments which have already been brought before them. See LaRue v. United States, No. 06-61, 2007 U.S. Dist. LEXIS 50567 at *4 (D.D.C. July 12, 2007) (refusing to rehear arguments that were "already made by Plaintiffs and rejected by the

---

[1] To the extent that Defendant now relies on placing Dr. Stillman's entire transcript in the record to read "in context," this is not new evidence that requires reconsideration. The entire transcript was available at the time of summary judgment. A party cannot claim as new evidence information which could have been brought forth in the initial motion. See Coopers & Lybrand, 322 F.3d at 167-68; cf. In re Ski Train Fire, 224 F.R.D. 543, 548 (S.D.N.Y. 2004) (information which party "had ready access to, if not clear knowledge of" at time of original motion not new evidence on reconsideration). "A court should not, under the guise of 'reconsidering' a decision, permit a party to offer information that was readily available to that party when the court first ruled." Casanova v. Marathon Corp., No. 05-496, 2007 U.S. Dist. LEXIS 90311 at *10 (D.D.C. Dec. 10, 2007).

Court"). Defendant has made no new argument about the state of Maryland law regarding causation. Defendant's argument regarding Dr. Stillman's affidavit was fully briefed in Defendant's Reply. See Def's Reply in Support of Summary Judgment, pg. 14-15, Attached as Appendix 1. When a comparison of the arguments on reconsideration shows them to do no more than reiterate the arguments on summary judgment, reconsideration is inappropriate. See Davis v. Lehane, 89 F. Supp. 2d 142, 147-48 (D. Mass. 2000). The Court took the motion for summary judgment under advisement in May and issued its order in December. There was no lack of consideration of the parties' arguments by the Court. When no new argument is made, and court had ample time to weigh the arguments, a reconsideration of summary judgment is inappropriate. See Moore v. Hartman, 332 F. Supp. 2d 252, 257 (D.D.C. 2004). Furthermore, the Court's denial of summary judgment on causation grounds was on the facts, and "[w]here the crux of an issue decided by the Court is fact-dependant, the Court has not decided 'a controlling question of law' justifying immediate appeal; certification of the underlying legal question could only result in the court of appeals improperly wading into the factual pond of an ongoing matter." Keystone Tobacco, 217 F.R.D. at 239.

    Defendant insinuates that its already rejected arguments must be accepted because to do otherwise is clear error. However, the kind of clear error of law that allows reconsideration is a failure to consider controlling precedent. See Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005). A failure to consider controlling precedent is when the Court did not have the controlling precedent before it in the moving papers; when the court has already considered the cases cited by the movant, the movant is relitigating the issue and reconsideration is inappropriate. Singh, 383 F. Supp. 2d at 102. Furthermore, in these cases of clear error, only "a clear conviction of error on a point of law that is certain to recur . . . will prevail over 'the law of

the case' whereas 'mere doubt' will not. In the former instance the court knows that later litigants will be governed by a different rule; in the latter that is only a possibility." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964).

## II. SUBSTANTIAL FACTOR, NOT LOSS OF CHANCE, IS THE TEST IN THIS CASE

This Court correctly held that the proper test in this case is the "substantial factor" test. Maryland law applies the substantial factor test, where a defendant is liable if "(a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Eagle-Picher Industries, Inc. v. Balbos, 604 A.2d 445, 460 (Md. 1992) (citing Restatement (Second) of Torts § 431). Maryland courts have long held that "where the injury to the plaintiff is the result of concurring causes, the question is one which should be submitted to the jury." Baltimore Transit Co. v. Bramble, 2 A.2d 416, 423 (Md. 1938). Furthermore, "unless the facts admit of but one inference, the determination of proximate cause, like that of negligence, 'that is, the determination of whether what occurred reasonably was to have been anticipated as a result of, or was induced by, the defendant's acts or omissions,' is for the jury." Farley v. Yerman, 190 A.2d 773, 776 (Md. 1963). Farley rejected the principle that when an injury could be compounded by the acts of the plaintiff, the plaintiff was solely responsible for her injury. Id.

Dr. Stillman states repeatedly that Ms. Deep's DES-injured uterus is a substantial or overriding factor in her infertility. See Deposition of Dr. Robert Stillman ("Stillman Depostion") pgs. 95:20, 102:20-21, attached as Exh. 3 to Def's Mtn. As Md. Civ. Pattern Jury Inst. § 10:3 states:

> The effect that an injury might have upon a particular person depends upon the susceptibility to injury of the plaintiff. In other words, the fact that the injury would have been less serious if

4

> inflicted on another person should not affect the amount of damages to which the plaintiff may be entitled.

Defendant wishes to argue that Ms. Deep's age is a more likely cause of her infertility, but Maryland law does not require that a plaintiff eliminate other causes, even significant other causes, before a case may be submitted to a jury.

With regard to Ms. Deep's age, Defendant must prove that Ms. Deep is infertile due to age-related factors, not the cause of infertility in the over-forty population generally. As such, Dr. Stillman's testimony about the "average woman" is irrelevant; Plaintiff cannot prove her case merely by reference to the statistics showing increased infertility in DES daughters, and Defendant should not be able to escape liability by introducing other statistics without connection to the Plaintiff. A large number of over-forty women, including older celebrities such as Geena Davis (pregnant at 48) and Susan Sarandon (pregnant at 46) have been able to conceive and carry a child to term, both naturally and with assisted fertility. See Allison Van Dusen, "In Pictures: 40-and-Over Celebrity Moms," Forbes, *available at* http://www.forbes.com/2007/04/10/fertility_men_women_forbeslife-cx_avd_0411starmoms_slide.html (last visited Dec. 18, 2007), App. 2; Mothers Over 40, "Celebrity Mothers," *available at* http://www.mothersover40.com/celebrities.html (last visited Dec. 18, 2007), App. 3.

As Defendant cannot prevail under Maryland's "substantial factor" test, Defendant attempts to shoehorn this case into the limited subset of "loss of chance" cases – cases where a doctor is presented with a patient more or less dead on his doorstep and the doctor fails to work miracles. The chief case for loss of chance, Fennell v. Southern Md. Hosp. Center, Inc., 580 A.2d 206 (Md. 1990), cites the lower court approvingly that "[i]t does not quite seem to make sense to impose upon a Defendant doctor the full responsibility for a patient's death when the patient had a less than even chance of surviving with proper treatment," 580 A.2d at 210. The

<u>Fennell</u> plaintiff had a bleeding, exploding brain, a no-hope case far from the circumstance of a forty-two year old trying to get pregnant. The <u>Fennell</u> court also holds that the Health Care Malpractice Claims Act creates a legislative policy "aimed at managing the soaring costs of malpractice litigation," which requires the loss of chance doctrine. 580 A.2d at 215. Those policy issues do not present themselves here.

Loss of chance is a very specific doctrine, and not one applicable to this case. The loss of chance cases proceed as follows: a patient has an ailment for which recovery under any circumstance is less than fifty percent. A doctor intervenes and tries to improve the situation, but fails, possibly even making the ailment worse.

This is a case where DES altered Ms. Deep's uterus from birth. Dr. Stillman testified that Ms. Deep's uterus is the same as when she was twenty-five years old. See Stillman Deposition, pg. 91:11-13. As Ms. Deep's uterus is "incompatible with her having a baby of her own eggs," <u>see</u> Stillman Deposition pg. 96:17-18, to the extent that fertility is a "chance," that chance was lost by Defendant's negligence far before the statistical likelihood of Ms. Deep's fertility declined.

**III.   DR. STILLMAN TESTIFIED THAT MS. DEEP'S UTERUS PRECLUDED ANY PREGNANCY**

On page 95 of Dr. Stillman's deposition, Defendant's counsel directly asks Dr. Stillman whether Ms. Deep's uterus is a substantial factor in her infertility. Dr. Stillman replies in the affirmative. <u>See</u> <u>Stillman Deposition</u>, pg. 95:5-9, attached as Exh. 3 to Def's Mtn. As the Court correctly decided, this testimony is sufficient to survive summary judgment, as Maryland law requires that a jury decide between substantial factors.

While Defendant claims that, "in context," Dr. Stillman does not claim DES caused Ms. Deep's infertility, neither Dr. Stillman's deposition nor any other evidence in the case support

6

that reading of his testimony. While Dr. Stillman was not optimistic about the chances of all over-forty women to have children, he believed that healthy women in Ms. Deep's age range had good chances, and Ms. Deep was likely one of those healthy women given her test results.

It is undisputed that Dr. Stillman halted Ms. Deep's fertility treatment as soon as he saw her T-shaped uterus. See Deposition of Catherine Deep, pg. 68, 69, Appendix 4. Dr. Stillman himself testified that, "what we do know, in my opinion, is regardless of donor egg or her own eggs, *she cannot do well with her uterus*." See Stillman Deposition, pg. 96:3-5, attached as Exh. 3 to Def's Mtn. (emphasis added). In Dr. Stillman's opinion, attempting to implant any fertilized embryos in Ms. Deep's uterus "would be unethical." See id., pg. 103.

Defendant attempts to characterize another segment of Dr. Stillman's testimony, including the line that Ms. Deep's uterus "is an overriding factor regardless of her age," as an inability to testify that Ms. Deep did not conceive. Dr. Stillman testified that Ms. Deep's uterus is "incompatible with her having a baby of her own eggs," Stillman Deposition pg. 96:17-18, and as recounted above, useless for all other fertility measures as well.

With regard to Dr. Stillman's statements about over-forty women in general, which remain irrelevant to Ms. Deep's case as her test results indicated fertility, Dr. Stillman provided different answers to different questions. On page 97 of his deposition, Dr. Stillman stated that a forty-three-year-old with no abnormalities has a less than fifty percent chance of an unassisted pregnancy. Stillman Deposition, pg. 97:15. Dr. Stillman then stated that with assisted reproduction, the chances remain under fifty percent due to male factor. See Stillman Deposition, pgs. 97:21-22, 98:9-14. With regard to "normal" couples, without male factor, Dr. Stillman said sixty percent would have a live birth without assisted reproduction. Stillman Deposition, pg. 99:10-15. In doing so, Dr. Stillman stated that, even with the statistics he cited

earlier in the deposition regarding the general population on pgs. 23-24 of his deposition, when it came to normal women with an absence of male factor, that sixty percent would be fertile. At no time did Dr. Stillman concede that Ms. Deep's fertility, absent her uterine abnormality, was likely impaired solely due to her age.

**IV.   DR. STILLMAN'S AFFIDAVIT IS ADMISSIBLE**

Although Dr. Stillman's deposition testimony set forth Dr. Stillman's opinions regarding causation, as Defendant asked a number of irrelevant and particular questions, the answers to which it repeated out of context, Plaintiff submitted a supplemental affidavit to clarify Dr. Stillman's testimony. When an affidavit does not contradict prior testimony, it is admissible. See Childs-Pierce v. Utility Workers of Am., 383 F. Supp. 2d 60, 63 n. 2 (D.D.C. 2005). Dr. Stillman's affidavit did not contradict the statements he made under deposition, and therefore the Court was correct to allow the affidavit.

A court "should not strike an affidavit 'when the affiant states in his affidavit that he was confused in his deposition or where the affiant needs to explain portions of his deposition testimony that were unclear.'" Flynn v. Veazy Construction Corp., 424 F. Supp. 2d 24, 35 (D.D.C. 2006) (citing City of St. Joseph v. Southwestern Bell Tel., 439 F.3d 468 (8th Cir. 2006)). As Dr. Stillman states in ¶1 of his affidavit, his statements have been mischaracterized, and the affidavit is to clarify them. See Stillman Affidavit, ¶1, , attached as Exh. 5 to Def's Mtn.

As the District of Columbia Circuit held in Pyramid Securities Ltd. v. IB Resolution, Inc., 924 F.2d 1114 (D.C. Cir. 1991), a subsequent affidavit contradicting sworn deposition testimony is held to a less exacting standard than one contradicting a prior affidavit. 924 F.2d at 1123. To the extent that there is a contradiction between Dr. Stillman's affidavit and his deposition, it is a contradiction within the deposition itself; Dr. Stillman quotes extensively from his deposition in his affidavit, and sets forth certain statements in his deposition as more accurate

than others.  When an expert's "deposition testimony, considered *in toto*, created ambiguities about material issues that were clarified by the later-filed affidavit," that affidavit is admissible. See Lowery v. Airco, Inc., 725 F. Supp. 82, 86 (D. Mass. 1989).  To the extent that Defendant's reading of Dr. Stillman's deposition is at all reasonable, Dr. Stillman's deposition is ambiguous enough to allow a subsequent affidavit.

Defendant's authorities regarding later affidavits miss the point.  Thomson v. Islam, No. 01-0585, 2005 U.S. Dist. LEXIS 37114 (D.D.C. July 29, 2005) is a case where the deponent gave contradictory answers at deposition, then provided an affidavit which set forth a third set of facts supported by nothing in the deposition.  Id. at *5-7  This is not the case here; Dr. Stillman's statements at deposition both support and are quoted liberally by the testimony in his affidavit. Pyramid Securities is a case where the affiant swore to one set of facts in one affidavit, then directly contradicted himself in a subsequent affidavit.  See 924 F.2d at 1122-23.  This case is neither about contradictory affidavits or repudiations of prior testimony.  Dr. Stillman's affidavit is admissible.

## V. CERTIFICATION TO THE COURT OF APPEALS IS UNWARRANTED

"The party seeking interlocutory review has the burden of persuading the Court that the circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Singh, 383 F. Supp. 2d at 104 (citing APCC Serv's, Inc. v. Sprint Commun's Co., 297 F. Supp. 2d 90, 95 (D.D.C. 2003)).  Defendant must show that there is a controlling question of law as to which there is a substantial difference of opinion and where an immediate appeal will materially advance the litigation.  See 28 U.S.C. § 1292(b).  Lilly must prove both that there is a close question of law and that its appeal will materially advance this case.  See United States ex rel. Hollander v. Clay, 420 F. Supp. 853, 859 (D.D.C. 1976).  Neither

proposition can be supported. Other than the truism that, if Defendant prevails on appeal, the case will be over, there is no compelling reason to stay the course of the proceedings.

Plaintiff does not dispute that the issue of causation is a "controlling" one, but the standard for causation in Maryland is not one as to which there is a substantial difference of opinion. Defendant's motion asks to certify a question regarding Maryland law to the Circuit. Questions of state law are disfavored for interlocutory appellate review. See Tolson v. United States, 732 F.2d 998, 1003 n. 12 (D.C. Cir. 1984). None of the cases cited by Lilly show that certification is appropriate regarding the interpretation of an undisputed principle of state law. See United States v. Philip Morris USA, Inc., 396 F.3d 1190 (D.C. Cir. 2005) (question of penalties under the federal RICO act); McMahon & Co. v. Wherehouse Entertainment, Inc., 65 F.3d 1044 (2d Cir. 1995) (question under the federal Securities Exchange Act); Clark v. Bear Stearns & Co., 966 F.2d 1318 (9th Cir. 1992) (another Securities Exchange Act case); Clarity Software, LLC v. Allianze Life Ins. Co. of N. Am., No. 2:04-cv-1441, 2007 U.S. Dist. LEXIS 40861 (W.D. Pa. June 5, 2007) (federal copyright case). The only personal injury causation case set forth, Wilson v. Merrell Dow Pharm's, Inc., 20 F.3d 379 (10th Cir. 1994) is inapposite. In Wilson, the issue on appeal involved a Daubert question, and Daubert was under consideration by the Supreme Court as the appeal was pending. See 20 F.3d at 379. As such, there was a question regarding the standard of evidence to be used for experts not only in all Bendectin cases, of which Wilson is one, but for all federal cases with expert witnesses. Such a conflict is not present here.

If, instead of the question of what law applies for causation, Defendant bases its motion for certification on the issue of Dr. Stillman's affidavit, there is no proof that this issue is "controlling." A controlling question of law is one which determines the outcome or the future

course of the litigation.  See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group, 233 F. Supp. 2d 16, 19 (D.D.C. 2002).  The Court relied on both Dr. Stillman's affidavit and on statements in his deposition testimony.  See Proceedings at 6, , attached as Exh. 1 to Def's Mtn.  The elimination of Dr. Stillman's affidavit is not guaranteed to result in a reversal of the original denial of summary judgment nor will it otherwise change the future course of the litigation.  It is not controlling.

There is also no substantial difference of opinion as to the admissibility of Dr. Stillman's affidavit.  "A substantial ground for difference of opinion is established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits."  APCC Servs. v. Sprint Commun's. Co., 297 F. Supp. 2d 90, 97 (D.D.C. 2003).  Without setting forth the controlling law on the issues where a substantive conflict exists, a party cannot prevail on a motion to certify an issue.  See Wausau Bus. Ins. Co. v. Turner Constr. Co., 151 F. Supp. 2d 488, 492-94 (S.D.N.Y. 2001).  Defendant has made no effort to set forth any evidence of difference of opinion.  As another court in this District declared, "[t]he mere claim that a decision has been wrongly decided is not enough to justify an interlocutory appeal. . . . While it is true that the facts underlying this suit are quite unusual, neither unusual facts nor legal issues of first impression require, or in this instance justify, certification of an interlocutory appeal."  First Am. Corp. v. Al-Nahyan, 948 F. Supp. 1107, 1117 (D.D.C. 1996).  When a party "cannot claim that this Court is in irreconcilable conflict with other courts . . . but can only claim to dislike this Court's reading of case law," certification of the question is inappropriate.  Singh, 383 F. Supp. 2d at 104.  All that has happened in this case is that Defendant disagrees with the Court regarding its decision; there is no showing that the issues are of such importance that the case must be taken off-schedule and delayed a year for the Circuit to render a decision.

Certification will not materially advance the litigation.  Unless the Court believes that reversal of its decision is likely, certification of a denial of summary judgment to the Court of Appeals does not materially advance the litigation.  See <u>Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group</u>, 233 F. Supp. 2d at 28.  When the summary judgment has passed and a long trial is not expected, a question need not be certified before trial as the course of the litigation will not be materially advanced.  See <u>Singh</u>, 383 F. Supp. 2d at 105.  Summary judgment has passed in this case and trial will not be prolonged.  Plaintiff deserves her day in court without facing a reiteration of every motion by Defendant.

## VI. CONCLUSION

Plaintiff has already argued against Defendant's motion for summary judgment before this Court.  Defendant has a chance to repeat its arguments both in the course of trial testimony and in various motions during and after trial.  There is no need to relitigate summary judgment just because Defendant is unhappy with the result.  Therefore, Defendant's motion should be DENIED.

Respectfully Submitted,

AARON LEVINE & ASSOCIATES

/s/ Aaron M. Levine
Aaron M. Levine, # 7864
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

## REQUEST FOR ORAL ARGUMENT

Pursuant to LCvR 7.1(f), Plaintiff requests an oral hearing of this Motion.

/s/ Aaron M. Levine
Aaron M. Levine, # 7864